**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

CLARA MCMILLIAN                                                                                            PLAINTIFF

v.                                              NO. 3:08CV00017 JLH

UNION PACIFIC RAILROAD COMPANY and
SEA TRAIN LOGISTICS, LLC                                                                          DEFENDANTS

**OPINION AND ORDER**

This is a personal injury case brought by Clara McMillian against Union Pacific Railroad Company and Sea Train Logistics, LLC. McMillian commenced this case in the Circuit Court of Crittenden County, Arkansas. Union Pacific removed the case to this Court. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because McMillian is a citizen of the State of Mississippi, Union Pacific is a Delaware corporation with its principal place of business in Omaha, Nebraska, and Sea Train Logistics, LLC, is a Texas company, and because the amount in controversy exceeds $75,000. Union Pacific has moved for summary judgment.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)).  A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

McMillian was a truck driver employed by Mason-Dixon Truck Lines.  She was injured on March 20, 2006, at a facility known as Port Sea Train at No. 3 AFCO Road in West Memphis, Arkansas, when she went to pick up a shipment on behalf of Cosco Container Lines.

Cosco is an ocean-going shipping line with its headquarters in China.  Ships bring Cosco container boxes to the west coast of the United States.  Upon arrival, container boxes are placed on intermodal trains and hauled inland by rail.  Some Cosco container boxes are hauled by rail to Union Pacific's intermodal yard in Marion, Arkansas.  The Union Pacific intermodal yard in Marion is leased to H & M International Transportation, Inc.  H & M removes the container boxes from intermodal trains and places the container boxes on 18-wheeler trailer chassis.  H & M then parks the trailer assemblies in designated parking lots in the UP intermodal yard to await pick-up by the owner or the owner's designee.  Typically, the container boxes are then trucked to their final destination.

In early 2006, the UP intermodal yard storage facility in Marion was near capacity for container boxes.  As a consequence, various container boxes were transported from the Union Pacific intermodal yard to private container yard storage facilities, one of which was the Port Sea Train facility operated by Sea Train Logistics.  McMillian has stated in an affidavit that the Port Sea Train facility was "a muddy, unsafe, flooded gravel lot" that was "objectionable and hazardous."  She also says that, if Union Pacific had left the trailer on a concrete pad in its own railyard or any other safe location, she would not have sustained her injuries.

Union Pacific has submitted an affidavit from an employee, Dan Hartmann, stating that it did not own or lease the Port Sea Train facility and that Cosco told Union Pacific that its container boxes should be moved to the Port Sea Train facility. McMillian offers no competent evidence to show that Union Pacific owned or leased the Port Sea Train facility. However, she offers the affidavit of Lawrence Trine, formerly the director of the southwest region for Mason-Dixon Truck Lines, on the issue of who selected the Port Sea Train facility. Trine states in his affidavit that the Port Sea Train facility was hazardous and was known to Union Pacific to be hazardous before McMillian's injury. He says that he had urged Union Pacific not to place loads there on numerous occasions due to the poor condition of the lot. He says that he had conversations with Cosco and Union Pacific regarding the hazards of this location. He also says:

> I learned that Union Pacific Railroad Company had, in fact, selected the location, recommended the location and was, in fact, sending "excess" Cosco deliveries to that location. These conversations and complaints occurred before the accident.

He further says that on March 20, 2006, the date that McMillian was injured, it was Union Pacific Railroad Company, not Cosco, that chose the Port Sea Train location for trailer deliveries.

Union Pacific responds in two ways. First, Union Pacific argues that Trine does not have personal knowledge of who selected the Port Sea Train facility and therefore his testimony that Union Pacific selected the Port Sea Train facility is inadmissible hearsay. Second, Union Pacific argues that even if it did select the Port Sea Train facility it is entitled to summary judgment because it owed plaintiff no duty.

On the first argument, viewing the facts in the light most favorable to the nonmoving party, the Court cannot say that Trine's testimony as to which party selected the Port Sea Train facility must be disregarded as inadmissible hearsay. Trine's affidavit indicates that he had repeated

3

conversations with both Union Pacific and Cosco during the course of the business dealing between Mason-Dixon Truck Lines, Cosco, and Union Pacific.  He states in his affidavit that he had conversations with those two parties and registered complaints about the Port Sea Train facility with those two parties before McMillian's accident.  While Trine does not expressly say that he learned from his conversations with Union Pacific that Union Pacific chose the Port Sea Train facility, it is a fair inference from his affidavit that his conversations with Union Pacific form part of the basis of his knowledge that Union Pacific chose the Port Sea Train facility.  Furthermore, it appears from Trine's affidavit that he had knowledge of the business relationship and course of dealing between the parties and that his testimony that Union Pacific chose the Port Sea Train facility could be based on his knowledge of the business relationship and course of dealing.  This case is at an early stage; no discovery has been conducted.  Trine's testimony that Union Pacific selected the Port Sea Train facility appears either to be an admission by a party opponent, and therefore admissible pursuant to Rule 801(d)(2) of the Federal Rules of Evidence, or more probative on the point for which it is offered than any other evidence that McMillian could procure through reasonable efforts absent discovery, and therefore admissible in opposition to the motion for summary judgment pursuant to Rule 807 of the Federal Rules of Evidence.  The Court does not believe that it would be reasonable at this stage to disregard Trine's affidavit.  Therefore, the Court cannot agree with Union Pacific that it is undisputed that Cosco, not Union Pacific, selected the Port Sea Train facility.

The larger and more difficult issue is whether Union Pacific owed a legal duty to McMillian.  Neither party has cited, nor has the Court found, a case on point.  The nearest rule of law that the Court has found is stated in RESTATEMENT (SECOND) OF TORTS § 411, which provides:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
> (b) to perform any duty which the employer owes to third persons.

Among the cases cited as authority for this rule is *Ozan Lumber Co. v. McNeely*, 214 Ark. 657, 217 S.W.2d 341 (1949). In that case, the plaintiffs were injured by a log truck owned and driven by C.M. Kirby, an independent contractor hauling logs for Ozan Lumber Company. *Id.* at 658-59, 217 S.W.2d at 342. Ozan Lumber Company defended on the basis that because Kirby was an independent contractor it could not be liable for his negligence. *Id.* at 663, 217 S.W.2d at 344. The Supreme Court held that Ozan Lumber Company "would be liable if it negligently employed Kirby as an independent contractor knowing that he was a careless, reckless and incompetent truck driver or operator." *Id.* at 665, 217 S.W.2d at 345; *see also* AMI Civil § 709 (2008 Ed.) (stating that an employer must use ordinary care to select an independent contractor). Thus, Ozan Lumber Company would not have been liable for the negligence of Kirby, but rather for its own negligence in selecting Kirby as an independent contractor when it knew that he was careless, reckless, and incompetent. The Supreme Court of Arkansas has also held that "the duty rests on the employer to select a skilled and competent contractor, and the employer is liable to third persons for the negligent or wrongful acts of an independent contractor employed by him where he knew his character for negligence, reckless, or incompetency at the time he employed him . . . ." *Stoltze v. Arkansas Valley Elec. Coop. Corp.*, 354 Ark. 601, 609, 127 S.W.3d 466, 471 (2003).

Here, there is evidence from which a jury could reasonably conclude that Sea Train Logistics was an independent contractor selected by Union Pacific to provide a facility at which Cosco's

designee, Mason-Dixon Truck Lines, could retrieve Cosco's container box from Union Pacific. According to section 411 of the RESTATEMENT (SECOND) OF TORTS, Arkansas case law, and AMI 709, Union Pacific owed a duty to exercise reasonable care in selecting an independent contractor to provide the facility at which Mason-Dixon Truck Lines would retrieve Cosco's shipment. For purposes of summary judgment, Union Pacific has not disputed McMillian's allegation that the Port Sea Train facility was maintained in a hazardous condition. Furthermore, for purposes of summary judgment, Union Pacific has not disputed McMillian's allegation that Union Pacific knew that the Port Sea Train facility was in a hazardous condition. Viewing the facts in the light most favorable to McMillian, the Court does not believe that Union Pacific is entitled to summary judgment at this stage of the proceeding.

## CONCLUSION

For the reasons stated above, Union Pacific's motion for summary judgment is DENIED. Document #4.

IT IS SO ORDERED this 7th day of May, 2008.

							/s/ J. Leon Holmes
							_____
							J. LEON HOLMES
							UNITED STATES DISTRICT JUDGE