**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT OF ARKANSAS
JONESBORO DIVISION**

CLARA MCMILLIAN                                                                                          PLAINTIFF

v.                                              NO. 3:08CV00017 JLH

UNION PACIFIC RAILROAD COMPANY                                                            DEFENDANT

**OPINION AND ORDER**

Clara McMillian initiated this action against Union Pacific Railroad Company and Sea Train Logistics, LLC, in the Crittenden County Circuit Court on November 21, 2007. McMillian, a truck driver for Mason-Dixon Truck Lines, was injured while picking up a trailer load at the Port Sea Train facility and claims that Union Pacific was negligent in choosing to store its loads at that facility. On February 2, 2008, Union Pacific filed its notice of removal to the United States District Court for the Eastern District of Arkansas, Jonesboro Division, based on federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Union Pacific has filed a renewed motion for summary judgment (Docket #29), arguing that it did not own or lease Port Sea Train and did not select Port Sea Train as the storage facility for the load that McMillian was to pick up. McMillian filed her response, and Union Pacific replied. For the following reasons, summary judgment is granted in favor of Union Pacific.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial

responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

In a May 7, 2008 opinion, this Court set out the facts of the present case and denied Union Pacific's original motion for summary judgment (Docket #20). In that opinion, the Court stated that McMillian offered no competent evidence to show that Union Pacific owned or leased the Port Sea Train facility, and in the intervening time since that opinion McMillian has offered no further proof of Union Pacific's owning or leasing that facility. In fact, McMillian stated in deposition testimony that she had no knowledge of whether Union Pacific owned or leased Port Sea Train. Union Pacific has denied owning or leasing the Port Sea train facility and has submitted an affidavit from Tony Love, a Union Pacific employee, who states that Union Pacific did not own or lease Port Sea Train at the time of McMillian's injury. Because McMillian has offered no competent evidence on this point, and because she does not dispute Union Pacific's proffered evidence that it did not own or lease Port Sea Train, McMillian's claim that Union Pacific owned or leased the Port Sea Train facility fails.

Regarding McMillian's claim that Union Pacific was negligent in selecting Port Sea Train as the storage facility at which McMillian was to pick up her load, McMillian originally offered an

affidavit from Lawrence Trine, a former employee of Mason-Dixon Truck Lines.  In his affidavit, Trine stated that he had conversations with both Union Pacific and Cosco; that he learned that Union Pacific had selected and recommended Port Sea Train and was sending excess Cosco deliveries to that facility; and that on the date of McMillian's injury it was Union Pacific, not Cosco, that had chosen the Port Sea Train facility for deliveries.

In the Court's May 7 opinion denying summary judgment, the Court was unable to determine, considering the statements in Trine's affidavit and without any discovery having yet been conducted, that it was undisputed that Union Pacific had not selected the Port Sea Train facility.  Furthermore, the Court's May 7 opinion noted that the larger and more difficult issue was whether Union Pacific owed a legal duty to McMillian.  The Court's opinion proceeded to outline the prevailing law on employer liability to third parties for failure to exercise reasonable care in selecting a competent and careful independent contractor.  The Court reasoned that if Union Pacific had selected the Port Sea Train facility as the location for excess Cosco loads, then Union Pacific would owe a duty of reasonable care to select a competent and careful independent contractor (Sea Train Logistics, LLC) to provide a facility (Port Sea Train) at which Cosco's designee (Mason-Dixon Truck Lines) could retrieve Cosco's load from Union Pacific.

### III.

In Union Pacific's renewed motion for summary judgment, Union Pacific does not address whether it owed a duty to McMillian, nor does it dispute McMillian's allegation that the Port Sea Train facility was maintained in a hazardous condition.  Instead, Union Pacific's renewed motion for summary judgment focuses on the issue of whether Union Pacific selected the Port Sea Train facility as the location to which it delivered excess Cosco loads.  As Union Pacific notes, the Court

previously relied on Trine's affidavit in denying Union Pacific's original motion for summary judgment with respect to whether Union Pacific selected the Port Sea Train facility. The Court's opinion stated that Trine's affidavit implied that he had knowledge of the business relationship and course of dealing between Mason-Dixon Truck Lines, Cosco, and Union Pacific, and that his testimony that Union Pacific chose the Port Sea Train facility could have been based on his knowledge of the course of dealing and business relationship between the parties. The Court noted that, as of May 7, 2008, the case was at an early stage and no discovery had yet been conducted.

After completion of discovery, it is evident to the Court that Union Pacific has met its initial burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986), and that McMillian has failed to provide sufficient facts showing that there is a genuine issue as to whether Union Pacific selected Port Sea Train. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). Union Pacific has offered the affidavit of an employee, Dan Hartmann, who stated that Cosco told Union Pacific that its container boxes should be moved to the Port Sea Train facility. McMillian did not depose Hartmann. In Lawrence Trine's affidavit, he stated that he informed both Union Pacific and Cosco of Port Sea Train's hazardous condition and that, impliedly based on his knowledge of the business relationship and course of dealing between Union Pacific and Cosco, he knew that it was Union Pacific that selected Port Sea Train as the off-site storage facility to which Cosco's excess loads would be delivered. However, after considering Trine's deposition testimony, it is evident that Trine had no direct knowledge of the course of dealing or business relationship between Cosco and Union Pacific as to who decided to send overflow loads to the Port Sea Train facility. Trine, a Mason-

Dixon Truck Lines employee, admitted that he only knew what he was told by a Cosco employee. He admitted that he had no knowledge as to what went on between Cosco and Union Pacific and that no one at Union Pacific ever told him that it was Union Pacific that made the selection. He also admitted that he does not recall ever informing anyone at Union Pacific as to the potentially hazardous conditions at the Port Sea Train facility.

McMillian asserts that Trine's knowledge of the general course of dealing and business practices in the transportation industry are sufficient for him to offer reliable evidence that Union Pacific, in its regular course of dealing with Cosco, selected Port Sea Train facility. She cites generally to four cases, none of which are binding authority for this Court, on point, or helpful to the Court's analysis.[1] The cases cited by McMillian could only go toward supporting an argument that Trine's knowledge of general business practices and trade usage in the transportation industry could be considered in interpreting the contract language between Cosco and Union Pacific. However, as Trine stated in his deposition testimony, he had no direct knowledge of the business practices or courses of dealing between Cosco and Union Pacific as to which entity decided that Cosco container boxes would be shipped to the Port Sea Train facility when the Union Pacific facility was near capacity. Contrary to McMillian's assertion, Trine's deposition testimony was not clear that Union

---

[1] McMillian cites generally to *In re Nutritional Sourcing Corp.*, No. 07-11038, 2008 WL 5396491, at *7 (Bankr. D. Del. 2008) (stating that, under New York law, trade usage may be considered in interpreting contract language); *Dodge v. Hedden*, 42 F. 446, 447 (S.D.N.Y. 1889) (stating that trade usage used to interpret tariff laws must be well-known and general); *Sharpensteen v. Pearce*, 219 Ark. 916, 917, 245 S.W.2d 385, 386 (1952) (stating that if trade usage "was known to both parties or so widespread in the industry that the contract would be presumed to have been made with reference to it," then the trade usage can become part of the contract); and *Barrie v. Quimby*, 206 Mass. 259, 265, 92 N.E. 451, 454 (1910) (stating that, under Massachusetts law, trade usage may be considered in interpreting the meaning of contract terms).

Pacific selected Port Sea Train. Rather, Trine's deposition testimony was only clear that a Cosco employee told him that Union Pacific had selected Port Sea Train, but that Trine only knew what he was told and had no direct knowledge of what went on between Cosco and Union Pacific.

Union Pacific asserts that Trine's statements regarding what he heard from a Cosco employee are inadmissible hearsay, citing for support *Ward v. International Paper Co.*, 509 F.3d 457 (8th Cir. 2007). In that case, the court rejected as hearsay the statements of two affiants who had no personal knowledge of whether their positions were taken over by younger employees – "one simply 'heard' about it and the other 'learned' about it." *Ward*, 509 F.3d at 462. Because the statements were not based on personal knowledge, the court determined them to be inadmissible hearsay and could not consider them. *Id.*; *see also McKay v. U.S. Dep't of Transp.*, 340 F.3d 695, 699 n.2 (stating that reported statements by other co-workers were not evidence allowed for consideration under Federal Rule of Civil Procedure 56(e)); FED. R. CIV. P. 56(e) ("[An a]ffidavit must be made on personal knowledge, must set out facts that would be admissible in evidence, and must show that the affiant is competent to testify on the matters stated."). In this case, Trine, an employee of Mason-Dixon Truck Lines, has based his purported knowledge of who chose Port Sea Train on what he was told by an employee at Cosco. Trine's knowledge of the business practices and course of dealings in the transportation industry, or even between Cosco and Union Pacific generally, do not provide substantial support for his assertion that it was Union Pacific that chose Port Sea Train. Trine admitted that he was not privy to the conversations between Cosco and Union Pacific and that those conversations were over his level of authority. Therefore, because Trine's assertions are not based on personal knowledge regarding the dealings between Union Pacific and Cosco, but instead are based on what he was told by a Cosco employee, those statements are inadmissible hearsay and

cannot be considered by the Court on the question of which business entity selected the Port Sea Train facility.

In her response brief, McMillian also contends that Union Pacific was negligent in allowing its facility to become at or near capacity and in failing to construct more concrete pads for storage. That allegation, however, was not raised by McMillian in her complaint, and she has presented no legal theory of redress on which Union Pacific could be held liable based on those facts even as alleged. McMillian also contends in her response brief that counsel for Union Pacific made statements in Trine's deposition that amount to admissions of Union Pacific's liability. However, even if the Court could consider statements made by Union Pacific's counsel during a deposition, after reviewing those statements the Court is satisfied that they do not amount to admissions that Union Pacific selected Port Sea Train. The statements of Union Pacific's counsel reveal only that Union Pacific knew that its facility was at or nearing capacity and that it needed to move some containers to another off-site location.

Finally, McMillian questions the affidavit statements of Dan Hartmann. Hartmann stated that he was the Senior Business Manager for the Union Pacific Intermodal Group at the time of the events forming the basis for McMillian's complaint and that Cosco was his account responsibility, meaning that he had personal knowledge of the business dealings between Cosco and Union Pacific on the shipment and storage of Cosco containers. Hartmann then stated that Cosco told Union Pacific to move its container boxes to the Port Sea Train facility and that if Cosco had selected a different facility, then Union Pacific would have transported the loads to that facility. As McMillian notes, Hartmann does not know whether Union Pacific or Cosco arranged for the transportation to Port Sea Train, but which entity arranged for the transportation is irrelevant to the question of which

entity initially selected Port Sea Train as the final destination.

Other than Trine's testimony, McMillian offers no evidence that Union Pacific, rather than Cosco, negligently selected the Port Sea Train facility. Trine's assertions are inadmissible hearsay and thus cannot be considered by the Court under Federal Rule of Civil Procedure 56(e). Because Trine's statements that Union Pacific selected Port Sea Train are inadmissible hearsay not based on personal knowledge, and because McMillian has offered no other evidence that Union Pacific selected the Port Sea Train facility, McMillian has failed to provide sufficient facts showing that there is a genuine issue for trial.

## CONCLUSION

Union Pacific has met its initial burden of demonstrating that there is no genuine issue of material fact as to whether Union Pacific selected the Port Sea Train facility, and McMillian has failed to bring forth specific facts showing that a genuine issue exists for trial. Therefore, Union Pacific's renewed motion for summary judgment is GRANTED. Document #29.

IT IS SO ORDERED this 21st day of January, 2009.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE